878 A.2d 615

**Jaedon JOHNSON**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

**No. 125, Sept. Term, 2004.**

Court of Appeals of Maryland.

July 15, 2005.

John J. Condliffe (Shub-Condliffe & Condliffe, P.A., on brief), Towson, for petitioner.

Patricia McHugh Lambert (Susan M. Eugeneuer, Ruth F. Vadi, Hodes, Ulman, Pessin & Katz, P.A., on brief), Towson, for respondent.

Michael J. Schreyer, Donahue, Seidman & Schreyer, Waldorf, amicus curiae.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

Jaedon Johnson is a minor child whose father, Jermal Thomas, was killed in an automobile accident on March 6, 2002. Mr. Thomas, riding in a car driven by Damon Gaither, was killed by the negligent actions of Mr. Gaither.[1] Mr.

---

1. The parties have agreed for purposes of this litigation that Mr. Gaither was negligent and that his actions caused the death of Mr. Thomas.

Gaither had no automobile insurance. Mr. Thomas was insured by Hartford Underwriters Insurance Company ("Hartford") and his policy provided uninsured motorist coverage of $20,000. Jaedon's mother, Tammika Johnson, was insured by Nationwide Mutual Insurance Company ("Nationwide") and her policy provided uninsured motorist coverage in the amount of $25,000.

On October 2, 2002, Jadeon filed a Complaint against Mr. Gaither (Wrongful Death), Hartford (Breach of Contract), and Nationwide (Breach of Contract). The counts against Mr. Gaither and Hartford were resolved with the dismissal of the complaint against Mr. Gaither and the payment of $20,000 from Hartford. Jaedon continued to pursue his claim for uninsured motorist coverage under his mother's policy, and on June 19, 2003, he filed a motion for partial summary judgment against Nationwide. On July 2, 2003, Nationwide filed a cross-motion for summary judgment. On July 28, the Circuit Court for Baltimore City held a hearing on the matter, granted Jaedon's motion, and issued an order which states, in pertinent part:

> [T]he plaintiff's motion is hereby GRANTED and the defendant Nationwide Mutual Insurance Company's contract is determined to provide underinsured motorist coverage in the amount of $5,000.00 to Jaedon Johnson, in addition to the $20,000 in benefits available under the insurance policy of the decedent, Jermal Thomas. This issue is controlled by the Court of Appeals' alternative holding in *Forbes v. Harleysville Mutual Ins. Co.*, 322 Md. 689, 708–713, 589 A.2d 944 (1991), notwithstanding the language of Md.Code Ann. [Ins. Art.] § 19–509(c)(2).

Nationwide appealed and on October 6, 2004, the Court of Special Appeals, in a reported opinion, reversed the Circuit Court. *Nationwide Mut. Ins. Co. v. Johnson*, 159 Md.App. 345, 859 A.2d 279 (2004). The Court of Special Appeals held that Jaedon's claim for the wrongful death of his father (Mr. Thomas) was not covered under his mother's Nationwide policy because Mr. Thomas was not an insured under that policy. Jaedon filed a petition for writ of certiorari, which we

granted. *Johnson v. Nationwide,* 384 Md. 581, 865 A.2d 589 (2005).

The question before us is whether § 19–509 of the Insurance Article requires an insurer to provide uninsured motorist coverage for the wrongful death of a person who was not an insured under the policy. We hold that § 19–509 does not require an insurer to provide such coverage.

## FACTS

Jadeon lived with his mother at the time of Mr. Thomas's accident. Mr. Thomas did not live with Ms. Johnson, nor was he ever married to Ms. Johnson. Mr. Thomas was not an "insured" on Ms. Johnson's Nationwide policy. Ms. Johnson was the only named "insured" under her policy. The Nationwide policy issued to Ms. Johnson provides, in pertinent part:

> We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative, and because of property damage. . . .

> "You" and "Your" mean the policyholder and spouse if living in the same household.

> "Relative" means one who regularly lives in your household and who is related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household.

> "Insured" means one who is described as entitled to protection under each coverage.

## STANDARD OF REVIEW

As stated in Md. Rule 2–501(f), "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Whether summary judgment was properly granted is a question of law, and we must determine whether the trial court was legally

correct in doing so. *Goodwich v. Sinai Hosp. of Baltimore,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996). In the present case, the parties agree that there are no factual disputes. Rather, the application of case law and the interpretation of a particular section of the Insurance Article were the only questions before the trial court, and they are the only questions now before us. As such, it is clear that our review is *de novo. See Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002) (noting that where the order of the trial court "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review").

## DISCUSSION

No one argues that Mr. Thomas was a named insured on Ms. Johnson's Nationwide policy and Jaedon is not arguing that the policy itself requires coverage. Rather, Jaedon argues that § 19–509(c)(2) of the Insurance Article requires Nationwide to pay the benefits sought. Section 19–509(a)(1) of the Insurance Article defines "uninsured motor vehicle" as a motor vehicle, "the ownership, maintenance, or use of which has resulted in the bodily injury or death of an *insured* [.]" Md.Code (1997, 2002 Repl.Vol.), § 19–509(a)(1) of the Insurance Article. (Emphasis added.) [2] We note that the motor vehicle involved in the present case was not an "uninsured motor vehicle" as defined by § 19–509(a)(1), *in relation to Ms. Johnson's Nationwide policy,* because Mr. Thomas was not an insured under that policy. Nonetheless, Jaedon is attempting to collect uninsured motorist benefits for the death of Mr. Thomas under Ms. Johnson's Nationwide policy.

In support of this attempt, Jaedon relies on Section 19–509(c) of the Insurance article, which provides:

---

2. Section 19–501(d) defines "named insured" as "the person denominated in the declarations in a motor vehicle liability insurance policy." Md.Code (1997, 2002 Repl.Vol.), § 19–504(d) of the Insurance Article.

In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that: (1) the *insured* is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative *of the insured,* who is described in § 3–904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle *because the insured died* as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

Md.Code (1997, 2002 Repl.Vol.), § 19–509(c) of the Insurance Article. (Emphasis added.)

 As we have so often stated, "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). To begin with, we must consider the plain language of the statute. As noted in *Chesapeake & Potomac Telephone Co. v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 683 A.2d 512 (1996), "we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also." *Chesapeake & Potomac Telephone,* 343 Md. at 578, 683 A.2d at 517; *see also Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 ("If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written."). Moreover, "[w]here the statutory language is plain and unambiguous, a court may neither add nor delete language so as to 'reflect an intent not evidenced in that language.' " *Chesapeake & Potomac Telephone,* 343 Md. at 579,

683 A.2d at 517 (quoting *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993)).

██ Considering the plain language of § 19–502(c)(1),[3] Jaedon cannot recover under that section for the wrongful death of his father, Mr. Thomas. The words of the statute require each motor vehicle liability insurance policy to include coverage for *that policy's insured* for bodily injuries *sustained by that policy's insured,* in a motor vehicle accident involving the use of an uninsured motor vehicle. Jaedon's argument that "the only requirement for Jaedon's recovery under his mother's policy is that Jaedon be a survivorship [sic] of *an* 'insured' under the statute ..." (emphasis added), is illogical.

██ To interpret the statute that way would mean that the legislature was requiring every policy to provide uninsured motorist coverage to an unknown number of people, not named in the policy, who are related to (but not living with) someone who is protected by the policy, in the event that those unknown people should be involved in an accident with an uninsured motor vehicle. We can only describe this construction of the statute as convoluted. Our goal in interpreting statutes is to give them their "most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used." *Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997). We will avoid constructions that are "illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994). Moreover, we will not engage in a " 'forced or subtle interpretation in an attempt to extend or limit the statute's meaning.' " *Nesbit v. GEICO,* 382 Md. 65, 76, 854 A.2d 879, 885 (2004) (quoting *Taylor v. NationsBank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001)). In

---

**3.** As previously stated, that section provides that each motor vehicle liability insurance policy shall contain coverage for damages that "the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle...." Md.Code (1997, 2002 Repl.Vol.), § 19–509(c)(1) of the Insurance Article.

our view, § 19–506(c)(1) requires that the insurance policy provide coverage *to the insured for his or her own bodily injuries.*

Considering the words of § 19–509(c)(2), it is similarly not possible for Jaedon to recover under that section because it only requires the insurance policy to provide coverage to surviving relatives *for the death of the insured.* Although Jaedon is a surviving relative of Mr. Thomas, Mr. Thomas was not an insured under the Nationwide policy through which the uninsured coverage is sought. That fact prohibits Jaedon from recovering under that policy through the use of Section 19–509(c)(2), which plainly states that surviving relatives of the *insured* may recover for the death *of the insured.*

Jaedon relies on *Forbes v. Harleysville Mutual Insurance Company,* 322 Md. 689, 589 A.2d 944 (1991) to support his position. In *Forbes,* we held that Art. 48A, § 541(c)(2), the predecessor to § 19–509(c)(1), encompassed wrongful death claims. *Forbes,* 322 Md. at 701, 589 A.2d at 949. Section 541(c)(2) provided, in pertinent part, that every policy issued must contain coverage "for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." Md.Code (1957, 1991 Rep. Vol.), Art. 48A, § 541(c)(2).

Carol and Robin Forbes were married but not living together when Carol Forbes was killed in an automobile accident involving an uninsured motor vehicle on September 22, 1984. *Forbes,* 322 Md. at 692, 589 A.2d at 945. Carol had lived with her husband and children (Connie and George) until August 4, 1984, when she moved out. *Id.* On August 27, 1984, she also moved the children out of the family home and into her new apartment, without the consent of Robin. *Id.* The Forbeses never discussed divorce and Carol did not change her address with the Motor Vehicle Administration or for voter registration when she moved out of the family home. *Id.* In addition, Robin and Carol Forbes owned a Chevrolet station wagon

which was titled in both their names and was insured by Harleysville Mutual Insurance Company (Harleysville). *Forbes,* 322 Md. at 693 n. 1, 589 A.2d at 946 n. 1. While only Robin was designated in the policy as "named insured," both Carol and Robin were listed on the declaration page of the policy as operators of the vehicle. *Id.*

Robin filed suit in the Circuit Court for Anne Arundel County against his uninsured motorist carrier, Harleysville and against the tortfeasor. *Forbes,* 322 Md. at 692–93, 589 A.2d at 945. Among other things, Robin made claims on behalf of himself, Connie, and George for the wrongful death of Carol. *Forbes,* 322 Md. at 693, 589 A.2d at 946. The Circuit Court granted summary judgment on behalf of Harleysville as to the wrongful death claims, reasoning that Carol had moved out of the home and, therefore, was not an insured under the policy. *Id.* Robin appealed to the Court of Special Appeals. *Forbes,* 322 Md. at 694, 589 A.2d at 946.

While his appeal was pending, the Court of Special Appeals decided *Globe American Casualty v. Chung,* 76 Md.App. 524, 547 A.2d 654 (1988), *vacated,* 322 Md. 713, 589 A.2d 956 (1991), in which the intermediate appellate court considered the language of Art. 48A, § 541(c)(2) and concluded "that the statutorily required uninsured motorist coverage in automobile insurance policies does not include wrongful death claims." *Forbes,* 322 Md. at 694, 589 A.2d at 946. After the filing of the *Globe* opinion and before the Court of Special Appeals heard the *Forbes* case, Robin Forbes petitioned for a writ of certiorari, which we granted. *Forbes v. Harleysville Mutual Ins. Co.,* 316 Md. 107, 557 A.2d 255 (1989).

In *Forbes,* we reviewed the context of Art. 48A, § 541(c)(2) and discussed the public policy of assuring financial recovery to innocent victims of uninsured motor vehicle accidents,[4]

---

4. We cited *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 436 A.2d 465 (1981), in which the Court stated that "the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum

noting that the "remedial nature" of the uninsured motorist statute dictates " 'a liberal construction in order to effectuate its purpose.' " *Forbes*, 322 Md. at 698, 589 A.2d at 948 (quoting *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737, 436 A.2d 465, 475 (1981)).

Noting that wrongful death is included in the liability coverage of standard automobile insurance policies and that the coverage is mandated by statute, we reasoned that,

> the purpose of the required uninsured motorist coverage is to make available the same coverage as would have been available had the tortfeasor complied with the liability insurance requirements of the financial responsibility law. Since the liability insurance required by the financial responsibility law includes wrongful death claims, it follows that the uninsured motorist coverage also includes wrongful death claims.

*Forbes*, 322 Md. at 698, 589 A.2d at 948.

Harleysville also claimed that, even if the uninsured motorist statute covered wrongful death actions, there could be no coverage because Carol Forbes was not insured by the policy. She was not the named insured on the policy, nor did she live in the home of the named insured at the time of the accident. *Forbes*, 322 Md. at 701, 589 A.2d at 950.[5] We disagreed with Harleysville and held "under the particular circumstances of that case, Carol Forbes was an 'insured' or 'covered person' at the time of the accident." *Forbes*, 322 Md. at 702, 589 A.2d at 950. In support of this conclusion, we noted:

> It is almost certain that the intent of Carol and Robin Forbes in obtaining the Harleysville policy on the family station wagon was that both of them as co-owners and co-

---

requirements of the financial responsibility Law.' " *Webb*, 291 Md. at 737, 436 A.2d at 474 (quoting *Webb v. State Farm Mutual Automobile Ins. Co.*, 479 S.W.2d 148, 152 (Mo.App.1972)).

**5.** Harleysville conceded, however, that the children were insureds within the meaning of the policy, even though they were not named insureds and did not live in the home of the named insured at the time of the accident. *Id.*

operators would be insured with respect to their vehicle. Acceptance of Harleysville's theory would frustrate this intent. Moreover, under Harleysville's construction of the policy, whenever a married couple in the position of Carol and Robin Forbes separated, even temporarily, one of them would have to obtain a second policy on the family car if he or she were going to be fully insured with regard to the vehicle.

*Forbes*, 322 Md. at 705, 589 A.2d at 952. We concluded that even though Carol had temporarily moved out of the family home, she was still considered a resident of the insured's household for purposes of being covered by the couple's insurance policy. *Id.*

There is no question that the facts of the instant case are distinguishable from *Forbes*. Jaedon seeks to recover under his mother's insurance policy for the death of his father, a man who was not a named insured under that policy, was not married to the policyholder, and did not live with the policyholder. Recognizing that the Court's main holding does not support his case, Jaedon urges us to consider the "alternate holding" discussed by the Court in *Forbes*.

The Court noted that "[a]s an alternate holding, we agree with the petitioner's argument that the minor children's wrongful death claims were within the mandatory uninsured motorist coverage of Art. 48A, § 541(c), regardless of Carol Forbes's status under the language of the policy." *Forbes*, 322 Md. at 708, 589 A.2d at 953. The Court mentioned the statutory language "death of the insured" and stated that "[w]e do not believe, however, that the language of § 541(c)(1) and (3) means that the deceased must always be an 'insured' under the particular language of the insurance policy." *Forbes*, 322 Md. at 709, 589 A.2d at 954. To explain this conclusion, the Court wrote:

The basic coverage language of § 541(c) is set forth in paragraph (2) and requires coverage "for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries

[including death] sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." The Forbes children's wrongful death claims squarely fall within this statutory language even if their mother at the time of the accident was not an "insured" under the language of Harleysville's policy. The children are "insureds" under the Harleysville policy. Under Maryland's wrongful death statute the children are legally entitled to damages from the owner or operator of an uninsured motor vehicle because of the death of their mother sustained in an accident arising out of the operation of the uninsured vehicle.

*Forbes*, 322 Md. at 709, 589 A.2d at 954.

The language of the uninsured motorist statute has changed since *Forbes*.[6] As a result, the alternate holding in *Forbes* does not control the outcome of this case. The current statutory language makes it very clear that surviving family members can recover under the uninsured motorist coverage for the wrongful death of people *who were insured under that policy*.[7] Section 19–509(c)(1), while its language is similar to

---

**6.** As discussed in the opinion of the Court of Special Appeals, *Forbes* was filed on May 10, 1991. On April 7, 1991, the General Assembly amended the uninsured motorist statute and the new law became effective on July 1, 1991. *Nationwide v. Johnson*, 159 Md.App. 345, 353, 859 A.2d 279, 284 (2004).

**7.** As noted previously, § 19–509(c) provides:

In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) the *insured* is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative *of the insured*, who is described in § 3–904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle *because the insured died* as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

Md.Code (1997, 2002 Repl.Vol.), § 19–509(c) of the Insurance Article. (Emphasis added.)

the language interpreted in *Forbes*, must be considered along with § 19–509(c)(2), a section that was not before the Court in *Forbes*. When the sections are viewed together, it is clear that § 19–509(c)(1) gives no indication that the insured can recover for the bodily injuries of anyone but himself under that section. There is simply no room in the current statute to find that insured persons can recover under their own uninsured motorist policy for the wrongful death of family members who are not covered by that policy. As succinctly stated in the opinion of the Court of Special Appeals:

> Because the General Assembly included a subsection specifically addressing wrongful death claims—Ins. § 19–509(c)(2)—it is evident that the legislature intended the subsection to regulate all instances in which a claimant seeks wrongful death benefits under an uninsured motorist policy. Thus, contrary to appellee's argument, Ins. § 19–509(c)(1) does not apply.

*Nationwide v. Johnson*, 159 Md.App. at 354, 859 A.2d at 284. We agree.

▮▮▮▮ We recognize that the purpose of the required uninsured motorist coverage is " 'to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.' " *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169, 582 A.2d 501, 503 (quoting *Pennsylvania Nat'l. Mut. v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734, 737 (1980)). We also recognize that the remedial nature of the uninsured motorist statute " 'dictates a liberal construction in order to effectuate its purpose.' " *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. at 737, 436 A.2d at 475 (quoting *State Farm Mut. Ins. Co. v. Maryland Auto. Ins. Fund*, 277 Md. 602, 605, 356 A.2d 560, 562 (1976)). That purpose, however, is not without limits. The words of the statute itself delineate the extent of the statute's reach. *See Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 449, 849 A.2d 539, 547 (2004) (noting that the General Assembly's purpose in enacting the compulsory insurance statutes was not to assure *complete* insurance recovery for all victims of automobile accidents and reaffirming that the

purpose did not extend beyond the prescribed statutory minimum coverage regarding the household exclusion); *see also Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 762 (1995) (noting that the court "may not disregard the plain meaning" of the Workers' Compensation Act, also a remedial statute, in the name of liberal construction). To interpret the statute in the present case as suggested by Jaedon would require us to ignore the plain language and rewrite it ourselves. That is not within our power. As stated in *Stearman:*

> We will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be. The formidable doctrine of separation of powers demands that the courts remain in the sphere that belongs uniquely to the judiciary—that of interpreting, but not creating, the statutory law.

*Stearman,* 381 Md. at 454, 849 A.2d at 550.

In conclusion, we hold that § 19–509 of the Insurance Article does not require an insurer to provide uninsured motorist coverage for the wrongful death of a person who was not an insured under the policy. Section 19–509(c)(1) clearly requires the insurer to pay the insured for his or her own bodily injuries, suffered as a result of a collision with an uninsured motorist. Section 19–509(c)(2) makes it clear that if a person who is insured under the policy dies as a result of a motor vehicle collision with an uninsured motorist, the surviving relatives of that insured can recover for the wrongful death of the insured under the insured's policy.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. APPELLANT TO PAY ALL COSTS.